1   JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney

2

3   BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division

4   MATTHEW L. McCARTHY(CABN 217871)
   Assistant United States Attorney

5

6     450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102

7     Telephone:   (415) 436-6838
    Facsimile:    (415) 436-7234

8     Matthew.McCarthy@usdoj.gov

9   Attorneys for Plaintiff

            UNITED STATES DISTRICT COURT

10

           NORTHERN DISTRICT OF CALIFORNIA

11

             SAN FRANCISCO DIVISION

12

13   UNITED STATES OF AMERICA,    )  CR No. CR 08-0716  SI
                     )

14        Plaintiff,          )  **UNITED STATES' SENTENCING**
                     )  **MEMORANDUM**

15    v.                 )
                     )  Hearing Date:    October 9, 2009

16   RUFUS RODGERS,         )  Time:           11:00 a.m.
                     )  Judge:          Hon. Susan Illston

17        Defendant.        )
                     )

18

19                   **<u>INTRODUCTION</u>**

20       On June 17, 2009, defendant Rufus Rodgers pleaded guilty to possessing cocaine base

21 in the form of crack cocaine in violation of 21 U.S.C. § 841(a).  The defendant and the United

22 States did not enter into a plea agreement in this case.

23       The U.S. Probation Office prepared a Presentence Investigation Report, which calculated

24 the defendant to have a Criminal History Category of VI, and a sentencing guidelines range of

25 188-235 months.  The U.S. Probation Office has recommended a sentence of 144 months

26 imprisonment.

27       As discussed further below, the Department of Justice believes Congress should

28 eliminate the sentencing disparity between cocaine base (crack) and powder cocaine.  However,

as the defendant is a career offender, he is subject to sentencing under § 4B1.1 of the Sentencing Guidelines, which does not contain the disparity between cocaine base (crack) and powder cocaine provided for in § 2D1.1 of the sentencing guidelines. Accordingly, the government believes that the appropriate sentence in this case is 188 months – the low end of the career-offender guidelines applicable in this case.

## I.
## <u>BACKGROUND AND STATEMENT OF FACTS</u>

On August 12, 2009, the San Francisco Police Department ("SFPD") was conducting a "buy-bust" narcotics operation in the Tenderloin district of San Francisco. (PSR ¶ 5.) During the operation, an officer saw the defendant holding a bag of suspected crack cocaine while receiving money from an elderly woman. (*Id.*) The officers attempted to arrest the defendant, who fled. (*Id.*) After a foot chase, the defendant was detained. (*Id.*) He attempted to chew up and swallow the crack cocaine, and the officers had limited success in stopping him from doing so. (*Id.*) The defendant was arrested, and taken to a hospital for treatment. (*Id.*)

The officers recovered the crack cocaine spit out by the defendant, which was determined to weigh 10.25 grams (net). (PSR ¶¶ 5-6.) Crack cocaine currently sells on the street for $80-$100/gram. (PSR ¶ 6.) Accordingly, the defendant was in possession of $800-$1,000 worth of narcotics. Moreover, the defendant had $621 in cash. (*Id.*)

## II.
## <u>LEGAL STANDARD AT SENTENCING</u>

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the

sentence.  *Carty*, 520 F.3d at 991.  The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a).  *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes.  *Carty*, 520 F.3d at 991.  The Court should make an individualized determination based on the facts of each case.  *Id.*  The Court, however, is not required to raise every possible relevant issue sua sponte.  *Id.*

### III.
### 188 MONTHS IN PRISON IS THE APPROPRIATE SENTENCE

A.        **The Correct Guidelines Range Is 188 - 235 Months In Prison**

1.        **The Correct Guidelines Calculation Is Level 31**

The government agrees with the Probation Office that the following sentencing guidelines calculation is correct:

| Base offense level | USSG § 4B1.1(B) | 34 |
|---|---|---|
| Defendant accepted responsibility | USSG §3E1.1(a)+(b) | -3 |
| Total offense level | | 31 |

(PSR ¶ 22-24.)

2.        **The Defendant's Criminal History Category Is CHC VI**

The government agrees with the U.S. Probation Office's calculation of the defendant's criminal history, resulting in a Criminal History Category of VI.  (PSR ¶¶ 29-37.)  Moreover, given that the defendant is a Career Offender within the meaning of USSG § 4B1.1(a), a Criminal History Category of VI would be automatically applied in any event.  *See* USSG § 4B1.1(b).

3.        **The Correct Guidelines Range Is 188-235 Months In Prison**

The Guidelines Range provided for Offense Level 31 and Criminal History Category VI is 188-235 months in prison.  *See* U.S.S.G., Sentencing Table.  The sentencing range lies in Zone

D of the Sentencing Table, and the sentence must therefore be served in prison.  *Id.*

**B.     The Department of Justice Believes That The Sentencing Disparity Between Crack Cocaine And Powder Cocaine Should Be Eliminated, But The Defendant's Career Offender Sentencing Guideline Range Under USSG § 4B1.1 Does Not Implicate That Disparity**

The Department of Justice believes that Congress and the Sentencing Commission should eliminate the crack cocaine/powder cocaine sentencing disparity.  However, Congress has not yet determined whether or how to achieve a more appropriate sentencing scheme for crack and powder offenses.  Until Congress acts, the government believes that courts should exercise their discretion under existing case law to fashion a sentence that is consistent with the objectives of 18 U.S.C. § 3553(a).  However, unless and until Congress acts, the mandatory minimum sentences provided in 21 U.S.C. § 841 continue to apply, and the Department of Justice will continue to charge threshold quantities of crack cocaine required to trigger mandatory minimum sentences.

In this case, the defendant is a career offender and is subject to sentencing under § 4B1.1 of the Sentencing Guidelines.  The guidelines range calculated under that section is based on the defendant's criminal history and the maximum statutory sentence applicable to the charged offense, and therefore does not implicate that crack cocaine/powder cocaine sentencing disparity provided for in § 2D1.1 of the sentencing guidelines.  Accordingly, the government does not believe that a downward departure based on the crack/powder disparity is warranted in this case.

**C.     A Prison Sentence Of 188 Months Satisfies The 3553(a) Factors**

Analysis of the Guidelines and § 3553(a) shows that 188 months in prison is a reasonable and appropriate sentence in this case, and for this defendant.

**1.     188 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – § 3553(a)(1)**

**a.     The Nature and Circumstances of the Offense Support a 188 Month Sentence**

The defendant was arrested in the act of selling crack cocaine in the Tenderloin district, a area of this City that is plagued with narcotics trafficking, violence, and related crime.  Moreover, the defendant was in possession of nearly $1,000 worth of crack cocaine, indicating that he is more than just a minor dealer or an addict selling to support his own habit.  To the

contrary, the fact that the defendant had over $600 in cash and nearly $1,000 worth of narcotics strongly indicates that the defendant is a professional drug dealer motivated by economic gain rather than addiction.  Accordingly, a Guideline Sentence is appropriate here.

> **b.**     **The Defendant's History and Characteristics Warrant a 188 Month Sentence**

The defendant has suffered a lengthy series of convictions, resulting in a Criminal History Category of VI.  (PSR ¶¶ 29-37.)

The defendant's adult criminal record began as soon as he turned 18.  By the age of 20, the defendant had accumulated four misdemeanor convictions.  (PSR ¶¶ 29-31.)  These convictions included, among other things, disorderly conduct for prying open the security doors of a store (PSR ¶ 29) and battery for physically attacking a 51 year-old woman in her home (PSR ¶ 31).  Notably, a conviction for solicitation of prostitution at this time involved an offer to exchange sex for crack cocaine.  (PSR ¶ 30.)

At the age of 20, the defendant graduated to his first felony conviction – for assault likely to cause great bodily injury.  (PSR ¶ 33.)  That conviction arose from a series of actions in which the defendant and accomplices were beating, extorting, and robbing two middle-aged men.  (*Id.*)  Although the defendant was initially sentenced to only 63 days in jail, his repeated failures to abide by the terms of his release resulted in an extended jail sentence, followed by a commitment to state prison of two years.  (*Id.*)  After serving his initial sentence, the defendant's parole was twice revoked, resulting in additional sentences of 12 and 11 months.  (*Id.*)

Four years later, while on parole for the assault charge, the defendant was convicted of the state equivalent of the crime to which he has now plead guilty – possession of cocaine base for sale.  (PSR ¶ 34.)  Again, the initial sentence imposed was a relatively light 74 days in jail. (*Id.*)  This sentence is most likely a result of the fact that the defendant's parole was also revoked as a result of this arrest.  (PSR ¶ 33.)  At any rate, the defendant again failed to complete probation.  (PSR ¶ 34.)  His probation was revoked in 2005, and he was sentenced to five years in prison.  (*Id.*)  The defendant was on parole for this offense when he was arrested for the present charge.  (*Id.*)

In addition, the defendant has been arrested for numerous offenses that did not result in convictions.  (PSR ¶¶ 38-55.)  Some of these cases appear to have been dismissed, while others appear to have resulted in modifications or revocations of probation and parole.

For example, on May 30, 2002, the defendant was arrested for transportation/sale of a controlled substance.  (PSR ¶ 50.)  While the case was "dismissed in lieu of prosecution of another case," (PSR ¶ 50), it appears that this charge resulted in revocation of the defendant's probation on his assault conviction.  (*See* PSR ¶ 33, noting that probation was revoked and defendant was sentenced to prison on August 12, 2002.)

Similarly, the defendant was arrested on May 11, 2005 after police officers watched him make narcotics sales.  (PSR ¶ 53.)  Although that case was also dismissed by the District Attorney, the defendant's probation was revoked shortly thereafter on October 17, 2005, and the defendant was sentenced to five years in state prison.  (PSR ¶ 34.)  Moreover, his parole was revoked on the date of that arrest, resulting in an eleven month sentence.  (PSR ¶ 33.)

In short, the defendant has been constantly in custody, on probation, and/or on parole since he turned 18 years old.  At no point in his adult life has he been free of a criminal justice sentence.  The crimes the defendant has been convicted and/or incarcerated for include narcotics offenses and at least one crime of violence.  The defendant's lengthy criminal record absolutely supports a Guidelines sentence.

Accordingly, the government believes that 188 months in prison is an appropriate sentence in this case.

**2.      188 Months In Prison Should Deter The Defendant From Further Illegal Activity and Protect the Public from Further Crimes– §3553(a)(2)(B)+(C)**

The defendant has been sentenced to terms of imprisonment ranging from a few days to five years as a result of his numerous prior convictions.  (PSR ¶¶ 29-37.)  None of these sentences have served to deter him from on-going narcotics trafficking and other criminal activity.  Accordingly, the government believes that the Career Offender Guidelines are appropriate in this case, and the defendant should be sentenced accordingly.

The government believes that the term proposed here – 188 months – will serve to deter

1   the defendant from future criminal conduct.  Moreover, a lengthy prison term will serve to

2   protect the public from further crimes.

3   **D.    The Court Should Impose A Search Condition As A Term Of Supervised Release**

4          The government believes that the Court should impose, as a Special Condition of

5   Supervised Release, the following condition:

6          The defendant shall submit his person, property, place of residence, vehicle, and
       personal effects to search at any time of the day or night, with or without a warrant,
7       with or without probable cause, and with or without reasonable suspicion, by a
       probation officer or any federal, state, or local law enforcement officer.  Failure to
8       submit to a search may be grounds for revocation.  The defendant shall warn any
       residents that the premises may be subject to search.

9
   The Court has authority to include that Special Condition as a term of Supervised Release under
10
    Supreme Court and Ninth Circuit precedents.
11
           In *Samson v. California*, 547 U.S. 843, 846 (U.S. 2006), the Supreme Court considered
12
    the effect of a standard term of parole in California which stated that all parolees shall "agree in
13
    writing to be subject to search or seizure by a parole officer or other peace officer at any time of
14
    the day or night, with or without a search warrant and with or without cause."  There, a police
15
    officer searched a parolee without any specific probable cause or reasonable suspicion, but with
16
    knowledge that the parolee was in fact on parole.  *Id.* at 846-47.  During the search, the officer
17
    found narcotics and arrested the parolee.  *Id.* at 847.  The parolee moved to suppress the
18
    evidence and the motion was denied in light of the search condition quoted above.  *Id.*
19
           The Supreme Court upheld the denial of the motion to suppress.  *Id.* at 846.  The Court
20
    weighed the state's interest in reducing recidivism among its parolees against a parolee's
21
    reduced expectation of privacy and held that the Fourth Amendment does not prohibit a police
22
    officer from conducting a suspicionless search of a parolee.  *Id.* at 850-57.
23
           The Ninth Circuit applied the holding of *Samson* in the context of Federal Supervised
24
    Release in *United States v. Betts*, 511 F.3d 872 (9th Cir. 2007).  There, the District Court imposed
25
    a condition of Supervised Release requiring that "the defendant shall submit [*sic*] person and
26
    property to search and seizure at any time of the day or night by any law enforcement officer,
27
    with or without a warrant."  *Id.* at 876.  The defendant appealed his sentence, and challenged this
28

condition on the grounds that it was an abuse of discretion in light of his lack of criminal record

and acceptance of responsibility for his crime.  *Id.*   The Court of Appeals rejected this argument,

relying on the Supreme Court's decision in *Samson*:

> Because the blanket requirement imposed by California on state parolees did not violate the Fourth Amendment, *a fortiori* the individualized requirement imposed in this case on supervised release does not. There is no sound reason for distinguishing parole from supervised release with respect to this condition.  The federal system has abolished parole, and uses supervised release to supervise felons after they get out of prison. People on supervised release have not completed their sentences, they are serving them. The Court in *Samson* itself drew the analogy to supervised release.   After *Samson*, there is no room for treating the search condition in this case as an abuse of discretion.

*Id.* (footnotes omitted).

The defendant's lengthy criminal history provide ample support for a search

condition in this case.  As detailed above, the defendant has a criminal history

involving narcotics trafficking and violence which spans his entire adult life.

Moreover, such a condition is appropriate in this case because of the defendant's prior

grants of probation and parole.  As the Court is aware, grants of felony probation in

the state of California almost always include a similar search condition.  Further, as

noted in *Samson*, 547 U.S. at 846, parolees in California are required to "agree in

writing to be subject to search or seizure by a parole officer or other peace officer at

any time of the day or night, with or without a search warrant and with or without

cause."  Given that the defendant was subject to such a condition while on parole from

2002 through the time of his arrest in this case, the government believes that the

proposed condition should be imposed here.

## CONCLUSION

The Court should sentence the defendant to 188 months in prison.


DATED: October 5, 2009                         JOSEPH P. RUSSONIELLO
                                               United States Attorney


                                               _____/s/_____
                                               MATTHEW L. McCARTHY
                                               Assistant United States Attorney

UNITED STATES' SENT. MEM.
CR 08-0716-SI                        8